**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

IN RE:

    KOMLAN G. BADAKE
    MERCEDES J. BADAKE,

        Debtors.                                   Case No. 05-05272-8-JRL
                                                          Chapter 13

_____

**ORDER**

This case is before the court on the motion to deny confirmation filed by N.A.A. Funding, Inc. ("N.A.A. Funding"). On January 18, 2006, the court conducted a hearing on this matter in Wilmington, North Carolina.

The proposed Chapter 13 plan provides for aggregate payments of $8,573.00 with a payment of $143.00 for the first month, then payments of $150.00 for 56 months. The debtors bear the burden of demonstrating that the proposed Chapter 13 plan meets the requirement of 11 U.S.C. § 1325 for confirmation of a plan. Tillman v. Lombard, 156 B.R. 156, 158 (E.D.Va. 1993). N.A.A. Funding asserts that the debtors fail to satisfy the "best interest of creditors" test, pursuant to 11 U.S.C. 1325(a)(4), as the property to be distributed under the plan on account of each allowed unsecured claim is less than the amount that would be paid on such claim if the estate of the debtors were liquidated under Chapter 7.

    A.    Vehicles

First, N.A.A. Funding argues that the debtors have failed to account for non-exempt equity in a

1998 Toyota Camry and 2002 Ford Taurus. On their petition, the debtors alleged that they jointly owned a 1998 Toyota Camry and 2002 Ford Taurus. However, N.A.A. Funding discovered that both vehicles are titled in the name of the female debtor. N.A.A. Funding asserts that the applicable N.A.D.A. average retail value of the 1988 Toyota Camry is $1,725.00, and the N.A.D.A. average retail value of the 2002 Ford Taurus with allowed high mileage adjustment is $7,500.00, which yields a total value of $9,225.00. N.A.A. Funding asserts that, after reducing this value by the motor vehicle exemption of $1,500.00 and the wildcard exemption of $3,500.00, there remains non-exempt equity of $4,225.00.

The debtors assert that, when applying the "best interests of creditors" test, the liquidation value is applicable. The debtors contend that they listed the applicable N.A.D.A. liquidation values of the vehicles in their petition. The petition reflects that the 1998 Toyota Camry is valued at $975.00, and the 2002 Ford Taurus is valued at $5,825.00. The debtors contend that they maintained joint insurance on the vehicles and believed that they jointly owned the vehicles at the time of filing their petition.

The plain language of § 1325(a)(4) clearly refers to a liquidation standard. *See* In re Schyma, 68 B.R. 52, 59 (Bankr. D. Minn. 1985)(stating that "[a]nalysis under § 1325(a)(4) should use a current liquidation value of such property"); 8 LAWRENCE P. KING ET AL., COLLIER ON BANKR. ¶ 1325.05[2][c] (15th ed. rev. 2005)("The language of the statute plainly means that the court is to ascribe a liquidation value to all nonexempt property of the estate, as that term is defined under section 541"). In this district, the presumptive liquidation value is the N.A.D.A. wholesale value with appropriate adjustments, not the retail value. *See* In re Kawamoto, 03-02788-5-ATS (Bankr. E.D.N.C. Mar. 11, 2004). This court disagrees with the case of In re Gallup, 194 B.R. 851 (Bankr. W.D. Mo. 1996), which is cited by some treatises on this issue. The Gallup court held that, if the debtor retains possession of the vehicle, the retail value is the

appropriate measure under § 1325(a)(4). This case runs contrary to the plain language of the statute. *See* David Gray Carlson, *Car Wars: Valuation Standards in Chapter 13 Bankruptcy Cases*, 13 Bankr. Dev. J. 1, 54 n. 211 (stating that Gallup was wrongly decided, and § 1325(a)(4) refers to a liquidation standard). It is true that the proper value for establishing a creditor's secured claim in a Chapter 13 case is the retail value. In re Stout, Case No. 05-06121-8-JRL (Bankr. E.D.N.C. Oct. 6, 2005). In their petition, the debtors should have listed the vehicles at retail value. However, for purposes of conducting the liquidation test, a wholesale value must be used. Accordingly, the court overrules N.A.A. Funding's objection regarding non-exempt equity in the subject vehicles.

      B.      <u>Support of Adult Son</u>

N.A.A. Funding objects to the female debtor's failure to account for her bi-weekly contribution of $75.00 to her 21-year-old son who is a full-time college student in New York City. N.A.A. Funding also objects to the debtors' failure to account for the purchase of a used vehicle in the amount of $3,500.00 that they gave to the son when the debtors moved to North Carolina. The female debtor's son rents a one-room apartment in New York City with a roommate, and he works approximately 20 hours per week at $7.50 an hour. The son receives no support from other family members and receives no financial aid. The debtors listed this son as a dependent on their petition. The female debtor testified that she and the male debtor originally purchased the secondhand vehicle so that the male debtor would have transportation to work. When they relocated to North Carolina, they gave the son the vehicle so that he would have transportation for school and work.

Pursuant to § 1325(b)(2), disposable income includes "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the

3

debtor or a dependent of the debtor . . ." 11 U.S.C. § 1325(b)(2). The court concedes that, under certain circumstances, a debtor's moral obligation to support her adult children must yield to the interests of the debtor's creditors. For example in In re Sanders, 05-06880-8-JRL (Bankr. E.D.N.C. Oct. 27, 2005), this court concluded that a Chapter 13 debtor could not safeguard three vehicles in her bankruptcy case where the debtor's adult children were the primary users of two of the vehicles. However, in Sanders, the court found that both children had the ability to pay for the vehicles themselves, as one had a full-time career and the other was collecting disability payments.

Adult children may be considered dependents of the debtors where they are relatively young adults studying for their baccalaureate degrees. *See* In re Gonzales, 157 B.R. 604, 610-611 (Bankr. E.D. Mich. 1993)("The Debtor's children, although above the age of majority, have within society's current expectations reasonably not yet left the nest. Their parents cannot be faulted for giving them a small assist until their wings alone can support them."). In Gonzales, the court found that the debtors' payments of $400.00 monthly to their 19-year-old daughter and $300.00 monthly toward their 21-year-old daughter were reasonably necessary expenses for supporting the daughters who were full-time college students. Gonzales, 157 B.R. at 611. The money was going towards utilities, food, clothing, toiletries, entertainment, books, supplies, and transportation while the daughters attended college. Id. at 606. The Gonzales court noted that both children had part-time jobs and had obtained loans to contribute to their expenses. Id. at 606. In In re Riegodedios, 146 B.R. 691, 693 (Bankr. E.D. Va. 1992), the court held that it was reasonably necessary for the debtors to pay $614.00 monthly towards tuition and rent expenses for their daughter's college education.

In the case at bar, a parental contribution of $75.00 bi-weekly would only begin to scratch the

4

surface of expenses that the female debtor's son faces as a full-time student in New York City. Clearly, this contribution by the female debtor is reasonably necessary for the survival of her son who the court deems as a dependent in this matter. Moreover, the purchase of a used vehicle for the sum of $3,500.00 is a reasonably necessary expenditure, as the vehicle enables the son to travel to and from school and his part-time job. Accordingly, the court overrules N.A.A. Funding's objection regarding expenses towards the female debtor's son.

    C.    <u>Transfers</u>

N.A.A. Funding objects to certain transfers made by the debtors within one year prior to the subject bankruptcy filing. The debtors sold their home in New York for $250,000.00. The female debtor testified that after paying off the mortgage, taxes, attorney's fees, realtor's fees, and water and sewage expenses, there was approximately $34,000.00 of remaining proceeds. Out of that amount, the debtors paid $6,000.00 to the female debtor's sister, $1,500.00 to the female debtor's son, $4,500.00 to the male debtor's cousin, and $1,000.00 to the female debtor's brother. The debtors borrowed money from these family members, and the above-stated amounts constituted full payment of those loans. The debtors made a gift of $3,500.00 to the male debtor's brother and mother who live in Africa. They also purchased a used vehicle for $3,500.00 that the male debtor used as transportation to work prior to moving to North Carolina. The debtors gave that vehicle to the female debtor's son and placed the vehicle in his name. In addition, the female debtor paid $3,000.00 to a lawyer to defend her against N.A.A. Funding. The debtors used approximately $3,000.00 to purchase furniture and $1,500.00 to purchase a computer. They also put a down payment of $6,000.00 on a 2002 Ford Taurus. The female debtor testified that any remaining proceeds from the sale were used by the debtors to relocate to North Carolina, and that there were no

proceeds remaining at the time of filing bankruptcy.

N.A.A. Funding specifically objects to the loan repayments to family members in the amount of $13,000.00, the gift to the mother and son in Africa in the amount of $3,500.00, and the purchase of the vehicle that was conveyed to the son in the amount of $3,500.00. As noted above, the court finds that the purchase of the vehicle that was conveyed to the son, who is a full-time college student, qualifies as reasonably necessary support for a dependent. The court, however, sustains N.A.A. Funding's objection regarding the loan repayments totaling $13,000.00 and gift of $3,500.00. These constitute textbook avoidable transfers, pursuant to § 547(b), that must be accounted for in the event the debtors propose a new plan.

D.     Income

N.A.A. Funding asserts that the debtors' projected income is grossly understated because the debtors' monthly income listed on the petition is inaccurate. The debtors testified that they arrived at the figures in their petition by calculating an average from the pay stubs that they presented to their attorney. "The court, not the debtor, has the final say in projecting the debtor's disposable income." In re Solomon, 67 F.3d 1128, 1135 (4th Cir. 1995). After listening to the debtors' testimony, the court sustains N.A.A. Funding's objection regarding calculation of income, and any new proposed plan should be substantiated by the debtors' 2005 W2 forms.

E.     Voluntary and Involuntary Contributions to Retirement Accounts

N.A.A. Funding objects to the debtors' failure to account for voluntary contributions to 401(k) accounts. The female debtor makes bi-weekly voluntary contributions of approximately $93.00, and the male debtor makes a monthly voluntary contribution of $300.00. The debtors assert that voluntary

contributions to 401(k) accounts do not constitute disposable income. However, the law runs contrary to that assertion. It is clear that voluntary contributions by a Chapter 13 debtor to a 401(k) plan constitute disposable income, pursuant to § 1325(b). In re Cornelius, 195 B.R. 831 (Bankr. N.D.N.Y. 1995); In re Cavanaugh, 175 B.R. 369 (Bankr. D. Id. 1994); *see also* In re Festner, 54 B.R. 532 (Bankr. E.D.N.C. 1985)(holding that voluntary weekly deductions for retirement benefits, weekly deductions for purchasing stock, and monthly payments on a loan secured by stock were not necessary for the maintenance and support of the debtor or dependents). Accordingly, the court sustains N.A.A. Funding's objection regarding voluntary contributions to the 401(k) plans, finding that they are not necessary for the maintenance and support of the debtor or dependents. Any new proposed plan must account for these voluntary contributions.

      N.A.A. Funding also questions the male debtor's failure to account for a mandatory monthly contribution of $163.28 to his retirement program. In In re Fauntleroy, 03-02254-5-ATS (Bankr. E.D.N.C. Jun. 17, 2004), involving a debtor who was a professor at a state university, the court held that the debtor's expenditures towards voluntary repayment of a loan from his retirement account constituted disposable income; however, the debtor's contribution of 6% of his income to a retirement account was not considered disposable income where the contribution was mandated by the State of North Carolina. Similarly, in In re Tibbs, 242 B.R. 511 (Bankr. N.D. Ala. 1999), the court held that involuntary contributions that a debtor was required to make to the Alabama Teacher Retirement System, which contributions were a condition of her employment with the public school system, were reasonably necessary expenditures and did not constitute disposable income. Here, the male debtor is a teacher for the public school system in Brunswick County, North Carolina. Membership in the Teachers' and State

Employees' Retirement System of North Carolina is not optional, as membership automatically begins "90 days after the election, appointment or employment of a teacher or employee . . ." N.C. Gen. Stat. § 135-3. A percentage of a teacher's compensation is deducted each payroll period to provide for their retirement. N.C. Gen. Stat. § 135- 8(b). The male debtor testified that he has no access to this retirement money. The court overrules N.A.A. Funding's objection regarding the male debtor's mandatory contribution to the retirement program, finding that it does not constitute disposable income.

F.  Fitness Fee / Prepaid Legal Services

N.A.A. Funding objects to the fitness center fee of $15.00 that is deducted monthly from the female debtor's income. The female debtor, however, testified that she is still using the fitness center, which is arguably necessary for her physical well-being. The male debtor pays $25.90 monthly for prepaid legal services. Given the legal difficulties the debtors have experienced, the court deems the modest sum for prepaid legal services as a reasonable expense. The court overrules N.A.A. Funding's objections regarding these two expenses.

Based on the foregoing, the court overrules in part and sustains in part the objections of N.A.A. Funding. The debtors have 30 days from the date of this order to propose an amended plan in conformity with this ruling.

**So Ordered.**
**Dated:  February 15, 2006**

*J. Rich Leonard*
**United States Bankruptcy Judge**